# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### NORTHERN DIVISION

| | | |
|---|---|---|
| **DANIELLE N. SHIPLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:09CV36MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Plaintiff Danielle N. Shipley for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Plaintiff filed a brief in support of the Complaint. Doc.13. Defendant filed a brief in support of the Answer. Doc. 16. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 10.

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on August 28 and 31, 2006. Tr. 99, 104. Her applications were denied and she requested a hearing before an administrative law judge ("ALJ"). Tr. 55, 43-44, 49-53,   After a hearing, the ALJ found that Plaintiff was not disabled through the date of his decision, March 26, 2009. Tr. 6-19.   On May 29, 2009, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
# TESTIMONY BEFORE THE ADMINISTRATIVE LAW JUDGE

A.      **Plaintiff's Testimony:**

Plaintiff testified that at the time of the hearing she was twenty-three years of age and lived in an apartment with her two year old son. Tr. 24.

Plaintiff further testified that it had been six months to a year prior to the hearing since she last worked; that she had last worked in a plastic factory, where she worked for three hours before walking out of the job due to swelling in her knee; that she worked at McDonald's in 2005 or 2006; that she quit that job because of gas prices, her obtaining the job at the plastic factory, because she was pregnant, and because she could not perform her job; and that she worked at Hardees for approximately a month in 2006. Tr. 25, 30.  Plaintiff testified that her knee and "learning disability" prevent her from working.  Tr. 26.

Plaintiff also testified that she had a meniscus tear about three or four years prior to the hearing; that the tear required surgery; that she was "supposed to have more surgery" according to Dr. Weaver; that she further injured her knee when she fell during her pregnancy; that her back hurts as a result of sitting for a while; that standing for a while hurts her knee; that she can stand for an hour; and her knee hurts after walking a while. Tr. 26, 32.

Plaintiff testified that she has a learning disability and difficulty comprehending and continuing conversations; that she was told she could be "borderline ADD"; she was never in special education in school; that she had tutoring and after hours help at school; that she dropped out of school her sophomore year; and that she obtained her high school diploma through the Job Corps.  Tr. 27.

Plaintiff further testified that she had received treatment for bipolar disorder and depression; that her depression was based on her relationship with her son's father and her own past with her father; that she had a drinking problem when she was younger; and that she had a history of marijuana

use; that she told her doctor that she was using alcohol and marijuana to "self-medicate"; and that the doctor provided her with medication.  Tr. 27-28.

Plaintiff said that she cares for her son with assistance; that she has difficulty lifting her son because of her back; that her son weighed thirty pounds at the time of the hearing; that her son's father comes over to bathe him; that her mother and good friends help her; that she generally stays at home and takes care of her son; that she plays and interacts with her son, feeds him, and cooks for him and herself; that her mother does their laundry because her apartment does not have a washer and dryer; that her mother assists her with shopping; that she has a driver's license; that she does not have a vehicle; that she plays online video games; that she sometimes becomes frustrated when playing video games; that she does not take baths unless someone is there to assist her, due to difficulty getting out of the tub; that she can shower without difficulty; that she has anxiety when interacting with people; that her anxiety is lessened when she is at home; that she has friends; that her anxiety arises "when [she is] around new people"; and that she stutters, gets "really tense," and starts "freaking out a little bit" when she becomes anxious. Tr. 29, 30, 32-33.

Plaintiff testifies that she takes Lamictal; that she takes Trazodone to help her sleep; that she does not always use the Trazodone because she worries she might not hear her son; that she pays for her prescriptions through TANF; [1] that she sometimes has mood swings; that her mood swings are not as severe when she is on her medication; that she goes to the Arthur Center once a month to see Counselor Cindy [Mackey], and once every couple of months to see Andrea [Earlywine], who prescribes Plaintiff's medication; that she has punched walls and has some problems with anger; that she feels depressed at times; that she has crying spells "maybe every couple months" and lasting a "day or so"; that during these times her friends and mother assist in caring for her son;  that she has

---

[1] Temporary Assistance for Needy Families.

had issues with cutting herself and has ceased this behavior because she was told her son could be taken from her; that she has memory problems, problems with remembering dates, and problems concentrating; that she has trouble with the stress of "everyday life"; and that she has trouble making decisions and requires other people's opinions. Tr. 31-36.

**B.     Testimony of the Vocational Expert Jeffrey F. Magrowski:**

Jeffrey F. Magrowski, Ph.D., a Vocational Expert ("VE"), testified at Plaintiff's hearing.  The ALJ posed the following hypothetical to the VE:

> Assume an individual of the claimant's age, same education level, no past relevant work.  The individual is limited to performing light exertion level work and the individual can occasionally climb ropes, ladders and scaffolds.  Further, the individual is limited to performing simple, unskilled tasks only which require no more than occasional contact with the public and co-workers.  Would there be any jobs in the national or regional economy that such an individual with those limitations could perform?

Tr. 37.

Dr. Magrowski testified that there would be jobs such as light packing work, using the example of bottles or shoes, or light laundry work; that "it's light and unskilled"; that about 2,000 such jobs exist in the state of Missouri and over 200,000 in the national economy; that light laundry work is light and unskilled; that there are about 700 such jobs in the state and over 75,000 in the national economy; and that bench assembly work is light and unskilled with about 2,000 in Missouri and over 100,000 in the national economy.  Tr. 38.

The ALJ, leaving the facts of the first hypothetical unchanged, asked the VE if any jobs existed when limiting the scope to sedentary work.  The VE testified that "there would be some"; that "sedentary packaging, pharmaceuticals or CDs would be an example"; that there are about 300 such jobs in Missouri, and 17,000 in the national economy; that simple assembly work, such as cosmetics or lampshades, is sedentary and unskilled; that there are about 500 such jobs in the state and over 50,000 in the national economy; that "stuffing-type jobs where they stuff small toys, pillows" is

another example; and that 200 such jobs exist in the state economy and over 20,000 exist in the national economy. Tr. 38.

The ALJ asked the VE if there would be any jobs, assuming that "all of the exertional and non-exertional limitations as in number one, but with the added requirement that any job must allow for occasional, unscheduled disruptions of both the workday and the work week, secondary to potential periods of decompensation and necessity for treatment. Tr. 38. The VE testified that he did not know of any jobs in which Plaintiff could maintain with those restrictions. Tr. 38.

### III.
### LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th

Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992)

(holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result

in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

      (1) the claimant's daily activities;

      (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

      (3) any precipitating or aggravating factors;

      (4) the dosage, effectiveness, and side effects of any medication; and

      (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir.

1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the

plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

# IV.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

In the matter under consideration, as considered by the ALJ, Plaintiff alleged that she became disabled on April 1, 2006,[2] at age twenty, due to depression, obesity, anxiety, a learning disability, and degenerative joint disease of the left knee. Tr. 11. The ALJ found, with regard to Plaintiff's alleged mental impairment, that Plaintiff had "no restrictions of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration." Tr. 11. The ALJ further found that the objective findings did not provide strong support for Plaintiff's allegations of disabling symptoms and limitations; that, although there are underlying impairments that could reasonably cause some symptoms, the medical evidence did not demonstrate the existence of all of the symptoms Plaintiff alleged. Tr. 16. The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment as stated in the Listings.

---

[2]     Plaintiff's insured status expired on September 30, 2008. For entitlement to disability insurance benefits under Title II of the Act, Plaintiff has the additional burden of showing that she was disabled as defined by the Act prior to the expiration of her insured status on September 30, 2008. Tr. 11. See Pyland v. Apfel, 149 F.3d 873, 876-77 (8th Cir. 1998).

Tr. 12. After considering the entire record, the ALJ held that Plaintiff has a residual functional capacity to occasionally lift and carry twenty pounds; to frequently lift and carry ten pounds; to sit for six hours in an eight hour day; to stand or walk for six hours in an eight hour workday; and to occasionally climb ropes, ladders, and scaffolds; and that Plaintiff is limited to simple tasks which require no more than occasional contact with co-workers and the general public. Tr. 12. Because there are jobs in the economy which Plaintiff can perform, the ALJ found that Plaintiff is not disabled. Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in regard to his credibility determination; because the ALJ improperly weighed the medical opinion evidence, including the opinion of Dr. Perez, who was Plaintiff's treating doctor; and because the ALJ improperly found that there is work which Plaintiff can perform in the national economy.

## A.     Plaintiff's Credibility:

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v.

Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that there was a lack of objective medical evidence to support Plaintiff's complaints. The court notes that Plaintiff had surgery on her knee in October 2004; that on October 29, 2004, her surgeon, Kathleen Weaver, M.D., released Plaintiff to return to work so long as she wore a knee brace; that on November 5, 2004, Dr. Weaver noted that Plaintiff was "doing nicely"; and that in December 2003, physical therapy notes reflect that Plaintiff "demonstrated improvement in knee pain and [r]ange of motion" and that no further therapy was indicated. Tr. 217, 220, 395-96. When Plaintiff presented with knee pain in January 2005, Dr. Weaver recommended physical therapy. Tr. 215. January 2005 physical therapy notes state that Plaintiff had improved tolerances for quad strengthening and decreased tolerances for prolonged standing due to left knee pain. Tr. 389-93.

When Plaintiff presented for an injury to her left knee on September 21, 2005, x-rays showed no joint effusion and no acute abnormality. Tr. 256. When Plaintiff presented to the emergency room on February 20, 2006, with left knee pain, she was prescribed naprosyn and discharged. Tr. 231-38. Dr. Weaver reported on February 28, 2006, that when Plaintiff presented in the emergency room on

February 20, 2006, she had been lifting a couch; that, upon physical examination, Plaintiff had "some mild swelling in the knee," no medial or lateral joint line tenderness, moderate patella femoral pain with compression; and that she did not have "significant lateral riding patella." Tr. 212. When Plaintiff presented at the emergency room on May 28, 2007, complaining of left knee pain after she fell and twisted her knee, records reflect that she was given crutches and ibuprofen and that the impression was left knee strain. Tr. 491-501. May 30, 2007 x-rays showed no effusion, fracture, or acute bony abnormality and that the joint spaces were "maintained." Tr. 498.

In regard to Plaintiff's alleged mental impairment, the court notes that Plaintiff was seen at the Arthur Center on October 31, 2005, with anxiety problems stemming from her relationship with her significant other and depression; that in November 2005, Plaintiff presented with impaired coping, following the loss of her unborn child; that in July 2006, she presented following the breakup with her fiancé; that on July 20, 2006, Plaintiff presented for management of depression; that on August 1 and 2, 2006, Plaintiff, who was five months pregnant, presented with depression; that on August 2, 2006, she was admitted to the hospital after she cut her wrist superficially two nights prior to her admission, following a break-up with her boyfriend; that on August 11, 2006, when she presented for management of depression, her stressors included problems with her boyfriend; that on August 25, 2006, Plaintiff was seen for depression resulting from a recent break up with her fiancé; that on September 8, 2006, her depressive symptoms stemmed from relationship problems and her pregnancy; and that on September 29, 2006, Plaintiff presented to discuss management of her depressive symptoms. Tr. 314, 316, 300-305, 310. Also, in October and November 2006, Plaintiff presented to the Arthur Center with depressive symptoms stemming from her pregnancy and relationship with the father of her child. Tr. 317, 334-39. On July 23, 2007, when Plaintiff presented to the Arthur Center, it was reported that Plaintiff had relationship issues, anxiety, sadness, and depression. Tr. 435.

14

Plaintiff was seen for an "Outpatient Psychiatric Evaluation" on June 24, 2008, by Andrea Earlywine, R.N., C.S., at which time Nurse Earlywine reported that Plaintiff had not been seen since July 2007; that in July 2007 Plaintiff had been diagnosed by Dr. Perez with bipolar disorder, alcohol and marijuana abuse, anxiety disorder, and borderline traits; that it was recommended that Plaintiff abstain from using alcohol and marijuana; and that Plaintiff's abstenance would impact her response to medication and her overall mood. Tr. 440-43. Plaintiff was seen by Nurse Earlywine on July 29, 2008, at which time it was reported that medication made Plaintiff less "snappy" with her son and assisted her with sleeping; that Plaintiff was having relationship issues; and that her depression was "getting better." 431. In September, October, and November 2008, Nurse Earlywine reported that Plaintiff's mood was stable, her memory was intact, and her intellect average was fair. Tr. 431-34.

Christine Hurt, M.S.N., R.N., conducted an examination of Plaintiff on February 8, 2007. Ms. Hurt reported that Plaintiff was a "healthy appearing young woman who [sat] comfortably on the exam table holding her infant son and swinging her legs during exam and interview"; that Plaintiff was cooperative and conversant; that her gait was normal without use of assistive device; that she was 63 inches tall and weighed 210 pounds; that Plaintiff had symmetrical extremities without muscle wasting; that she had full use of her upper extremities and hands; that she had normal patella tracking and no ligamentous laxity; that she was alert and oriented; that her movements were coordinated; that she maintained good eye contact and "did not display nervousness or irritability"; that she was able to perform all activities requested of her without difficulty; that she was able to bend and squat without difficulty; and that her knee exam on this date was normal. Tr. 357-58.

A lack of objective medical evidence detracts from Plaintiff's subjective complaints. While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), the absence of

an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987). As such, the court finds that the ALJ properly considered the lack of objective medical evidence and that his decision in this regard is supported by substantial evidence.

Second, the ALJ considered in regard to Plaintiff's knee pain, that there was no evidence of recent surgery, physical therapy, chiropractic treatment, or treatment at a pain clinic, although Plaintiff had a history of knee pain and surgery. The ALJ noted that there existed no evidence that Plaintiff had refused any treatment. Tr. 16. In regard to Plaintiff's alleged mental impairments, the ALJ considered that she had not had any recent hospitalizations.[3] Tr. 16, 441. Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988) (holding that the failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). Even assuming that a plaintiff's financial resources were insufficient, failure to seek treatment offered to indigents detracts from a claim that the plaintiff did not seek medical treatment because of inadequate financial resources. See Riggins, 177 F.3d at 693. The court finds that the ALJ properly considered Plaintiff's lack of medical treatment and that his decision, in this regard is supported by substantial evidence on the record.

---

[3]     On October 19, 2004, Plaintiff did have arthroscopic abrasion and repair of her left medial and lateral retinacular release. Tr. 228-29, 293-97.

Third, the ALJ considered that Plaintiff regularly failed to comply with treatment. Tr. 16. The court notes that a physical therapist noted, in November 2004, that Plaintiff was not wearing a Thrombo Embolic Deterrent ("TED") hose, which had been prescribed. Tr. 403. Additionally, Plaintiff missed several therapy appointments in November 2004. Tr. 397, 400. When Plaintiff presented to Dr. Weaver, her surgeon, in December 2004, Dr. Weaver noted that Plaintiff was not complying with her physical therapy program. Tr. 216. Andrea Earlywine, R.N., noted in July 2007, that Plaintiff had been prescribed Lamictal and that she had not taken this medication because she was worried about the side effects. Tr. 440. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). As such, the court finds that the ALJ properly considered that Plaintiff failed to comply with prescribed treatment and that his decision, in this regard, is supported by substantial evidence.

Fourth, in regard to Plaintiff's alleged mental impairments, the ALJ considered that there are gaps in her treatment. Tr. 16. Indeed, the record reflects that Plaintiff sought mental health treatment in November 2005 and that she did not seek further mental health treatment until July 6, 2006. Tr. 314-15, 317-25. Plaintiff was seen on July 23, 2007, but she did not report for mental health treatment again until June 24, 2008. Tr. 435-39, 440-43. In regard to her alleged physical impairment, Plaintiff testified at the hearing that she had not seen a doctor for her physical impairments for a year. Tr. 32. As stated above, seeking limited medical treatment detracts from a claimant's assertion that she is disabled. See Edwards, 314 F.3d at 967. The court finds that the ALJ's consideration of gaps

in Plaintiff's mental health treatment is supported by substantial evidence and that it is consistent with the case law and Regulations.

Fifth, the ALJ considered that, although Plaintiff alleged that she had a learning disability, she did not qualify for special education services and had completed high school. Tr. 16. Indeed, Plaintiff testified that she did not receive special education services in high school. Tr. 26-27.

Sixth, the ALJ considered Plaintiff's work history, and noted that this was "not a positive factor in assessing her credibility." Tr. 17. In this regard, the ALJ considered that Plaintiff worked sporadically prior to the alleged disability date, never worked at the level of substantial gainful activity, and had higher earnings in the year of the alleged disability than she did prior to that onset date. Tr. 17. The ALJ acknowledged that Plaintiff was quite young, but "she has had ample time to demonstrate motivation for working, and she has failed to do so." Tr. 17. An ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The court finds that the ALJ properly considered Plaintiff's work history and that the record in this regard is supported by substantial evidence.

Seventh, the ALJ considered the absence of opinions from treating or examining physicians indicating that Plaintiff is disabled. Tr. 16. A record which contains no physician opinion of disability detracts from claimant's subjective complaints. See Edwards, 809 F.2d at 508; Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981). The court find that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Eighth, the ALJ considered Plaintiff's demeanor and appearance during testimony as generally unpersuasive. In particular, the ALJ considered that Plaintiff displayed no pain or discomfort and that she had no difficulty understanding and responding to questions. Tr. 17. While an ALJ cannot accept

18

or reject subjective complaints *solely* on the basis of personal observations, <u>Ward v. Heckler</u>, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. <u>Steed v. Astrue</u>, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); <u>Jones v. Callahan</u>,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations. As such, the court finds that the ALJ properly considered Plaintiff's demeanor and that his decision, in this regard, is supported by substantial evidence.

Ninth, the ALJ considered that most of Plaintiff's mental problems stemmed from her relationship with the father of her child. Tr. 16. The court notes that, in regard to her depression, Plaintiff testified that her depression was related to her relationships with others, including her child's father and her own father. Tr. 27. Situational depression is not disabling. <u>See</u> <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Additionally, the failure to attend counseling and a claimant's daily activities can support a conclusion that depression is situational due to temporary circumstances. <u>See</u> <u>id.</u> at 1039. The court finds that the ALJ properly considered the sources of Plaintiff's depression and that his decision in this regard is supported by substantial evidence.

Tenth, the court notes inconsistencies in Plaintiff's testimony. Although she alleged on her application that she was disabled due to depression and anxiety, she testified at the hearing that she she is disabled due to a learning disability and knee pain. Tr. 25-26. See Eichelberger, 290 F.3d at 589 ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inconsistencies or other circumstances.").

Eleventh, the court notes that Plaintiff reported that medication helped her symptoms; that her medications kept her calm; and that she had no side effects from her medications. In September 2004, a physical therapist noted that Plaintiff had no restrictions on weight bearing and "excellent" potential to reach and maintain her prior level of functioning. Tr. 383. In January 2005, a physical therapist noted that Plaintiff had made good progress, although she had decreased tolerance for prolonged standing and walking. Tr. 391. Nurse Earlywine reported on July 29, 2008, that Plaintiff said she needed to be back on her medication; that "friends said it helped"; and that when she was on Lamictal her son did not annoy her, she was not as snappy, and she slept better. Tr. 431. Additionally, on November 26, 2008, Plaintiff reported that Lamictal was "working" and helping her deal better with people. Tr. 434. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d at 384; Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. Furthermore, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to

consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994).

Twelfth, Plaintiff stated in a Function Report - Adult, dated September 27, 2006, that she was able to care for her cat, play video games, dress, bathe, shave and feed herself, do laundry, grocery shop with her mother, pay bills, and watch television. Tr. 16. Plaintiff testified at the hearing that she was able to play and interact with and cook for her son. Tr. 29. Plaintiff also reported that she was able to shower "with no problem"; that she spent time with friends; and that she played online video games. Tr. 17, 30, 536. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins, 177 F.3d at 692). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

In summary, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and is consistent with the case law and Regulations.

**B.    Weight Given to Medical Opinions:**

Plaintiff contends that the ALJ did not give proper weight to the opinion of Dr. Perez, her treating doctor. In particular, Plaintiff contends that the ALJ should have given controlling weight to the January 26, 2009 Medical Assessment of Ability to Do Work-Related Activities (Mental) completed by Dr. Perez and Nurse Earlywine. Tr. 539-40. This Assessment stated that Plaintiff had poor to no ability to deal with the public, work stressors, function independently, understand, remember and carry out complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations. The Assessment further stated that Plaintiff's ability in other areas was fair, with the exception of her ability to understand, remember, and carry out simple job instructions, in which area Plaintiff's ability was reported as good. The Assessment was signed by Nurse Earlywine on January 26, 2009. Below her signature is an illegible signature, dated January 28, 2009. Written on the form, next to the illegible signature, it states: "Dr. Fernando Perez supervises Andrea Earlywine. This is his signature." Tr. 540.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes, 275 F.3d at 725 (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589

(8th Cir. 1998)).  However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 9937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence").  "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).  A treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996).  Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987).  An ALJ may

"discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).  "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlain, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." Hogan, 239 F.3d at 961.

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996).  Additionally, SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

First, Plaintiff contends that the ALJ erred when he stated that there was no evidence indicating that Dr. Perez examined or treated her.  Plaintiff also contends that the ALJ erred in assuming that Nurse Earlywine completed the Assessment which was actually completed by Dr. Perez.  An "arguable deficiency in opinion-writing technique," however, does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome. See Senne v. Apfel, 198 F.3d 1 065, 1067 (8th Cir. 1999)  ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the

deficiency had no practical effect on the outcome of the case."); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Carlson v. Chater</u>, 74 F.3d 869, 871 (8th Cir. 1996); <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992). Moreover, the Assessment at issue was completed after the expiration of Plaintiff's insured status, and therefore, was not relevant to the time period at issue for Plaintiff's claim pursuant to Title II. <u>See</u> <u>Thomas</u>, 928 F.2d at 260-61; <u>Lopez</u>, 806 F.2d at 633. For the reasons discussed above and below, the court finds that the error on the part of the ALJ as alleged by Plaintiff did not affect the outcome of her case and that the ALJ's determination that she is not disabled is supported by substantial evidence on record.

Second, in regard to Plaintiff's contention that ALJ erred upon stating that there was no evidence that Dr. Perez examined or treated her, "[g]enerally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i). <u>See</u> <u>also</u> <u>Randolph v. Barnhart</u>, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist should not have been given controlling weight because the doctor had met with the plaintiff only three times at the time he completed the form). The record reflects that Dr. Perez saw Plaintiff only twice. Dr. Perez saw Plaintiff on August 2, 2006, when she was admitted for a suicide attempt and on July 23, 2007. Tr. 301, 435. As such, Dr. Perez's opinion was not entitled to much weight.

Third, the ALJ considered that the evidence of record does not support the degree of limitation attributed to Plaintiff in the Assessment. Tr. 14-15. While the Assessment states that Plaintiff was unable to behave in an emotionally stable manner or related predicably in social situations, Plaintiff testified that she has good relationships with friends. Tr. 28.

Fourth, Dr. Perez's own notes contradict the conclusions stated on the Assessment. In particular Dr. Perez reported on August 2, 2006, that Plaintiff maintained good eye contact, was cooperative, and spoke with a normal tone, rate, and volume. Dr. Perez also noted that Plaintiff did a "good job" taking care of her child. Dr. Perez further noted that Plaintiff had a depressed mood; that she exhibited goal directed thought process; and that she demonstrated normal intelligence and memory. Although Dr. Perez assigned Plaintiff a Global Assessment Functioning ("GAF") score of 35 upon her admission to Audrain Medical Center in August 2006, upon her discharge he assigned her a GAF of 60, which indicates only moderate difficulty in social and occupational functioning.[4] Tr. 301-303. In July 2007, Dr. Perez reported that Plaintiff said she was depressed. Dr. Perez also reported in July 2007 that Plaintiff was doing a good job taking care of her child; that her intelligence was within normal limits, that her insight and judgment were limited; that her recent and remote memory were grossly intact; and that her motivation was good. Tr. 435-39. See Hacker, 459 F.3d at 937.

Fifth, the ALJ also considered the opinion of the State agency psychologist, Stanley Hutson, Ph.D., who opined that Plaintiff was *moderately* limited in the ability to understand, remember, and carry out detailed instructions; maintain concentration for extended periods; work in coordination with or proximity to others; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace; accept instructions and respond

---

[4]     Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

appropriately to criticism from supervisors; get along with coworkers; maintain socially appropriate behavior; adhere to basic standards of cleanliness; respond appropriately to changes in a work setting; and set realistic goals or make plan independently of others. Tr. 15, 352-54. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (holding that State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007) (moderate limitations do not prevent an individual from functioning "satisfactorily").

Sixth, the ALJ did consider the findings as stated in the Assessment and incorporated some of them in his determination of Plaintiff's RFC. Consistent with the Assessment, the ALJ found that Plaintiff is limited to simple tasks requiring no more than occasional contact with co-workers and the general public. Tr. 12.

In conclusion, the court finds that the ALJ properly considered Dr. Perez's opinion; that he sufficiently explained his reasons for not giving Dr. Perez's Assessment controlling weight; and that the ALJ's decision in this regard is supported by substantial evidence. See Prosch, 201 F.3d at 1013.

## C.    Availability of Work in the National Economy Which Plaintiff Can Perform:

Plaintiff contends that the ALJ erred in finding that there is work in the national economy which she can perform. As stated above, the ALJ found that Plaintiff has the RFC to occasionally lift and carry twenty pounds; to frequently lift and carry ten pounds; to sit for six hours in an eight hour day; to stand or walk for six hours in an eight hour workday; and to occasionally climb ropes, ladders, and scaffolds; and that Plaintiff is limited to simple tasks which require no more than occasional contact with co-workers and the general public. Tr. 12.

The court finds that the ALJ's determination of Plaintiff's RFC is consistent with his findings regarding the medical evidence and Plaintiff's credibility and that it is based on substantial evidence

on the record. Moreover, the ALJ's determination of Plaintiff's RFC is precise as it directly addresses her restrictions. Additionally, the ALJ's assessment of Plaintiff's RFC is based upon and is consistent with all of the relevant evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). As required by the Regulations, and in accordance with SSR 96-8p, the ALJ properly determined Plaintiff's RFC based on his consideration of the entire record as a whole. See 20 C.F.R. § 404.1545. Consistent with SSR 96-8p, the ALJ cited specific medical and non-medical facts and evidence in assessing Plaintiff's RFC, including Plaintiff's treatment records and Plaintiff's subjective allegations of disability. The court finds, therefore, that the ALJ properly determined Plaintiff's RFC and that substantial evidence supports that finding.

The ALJ continued his evaluation at step four of the sequential evaluation process and compared Plaintiff's past relevant work to her assigned RFC. Tr. 18. The ALJ properly solicited the testimony of a VE, whose testimony supports his conclusion that there is work available in the national economy which Plaintiff can perform. See 20 C.F.R. § 404.1560(b)(2) ("[W]e may use the services of vocational experts or vocational specialists. . . to obtain evidence we need to help us determine whether you can do your past work."); Wagner v. Astrue, 499 F.3d 842, 853-54 (8th Cir. 2007) (holding that an ALJ may properly elicit testimony from a vocational expert in evaluating claimant's capacity to perform past relevant work).

The ALJ posed a hypothetical to the VE which included all of Plaintiff's impairments and limitations which the ALJ found credible. Indeed, an ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Gilbert v.

<u>Apfel</u>, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record.").

The VE responded to the ALJ's hypothetical incorporating Plaintiff's RFC that such a person could perform light work in packing, with 2,000 jobs in Missouri and over 200,000 in the nation; laundry working, with 700 jobs in Missouri and over 75,000 in the nation; and bench assembly, with 2,000 jobs in Missouri and 100,000 in the nation Tr. 12, 37-38. Because the hypothetical was properly formulated, the VE's testimony that Plaintiff could perform other work and that this work is available constitutes substantial evidence supporting the Commissioner's decision. <u>See</u> <u>Robson v. Astrue</u>, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); <u>Cruze v. Chater</u>, 85 F.3d 1320, 1323 (8th Cir. 1996); <u>Miller v. Shalala</u>, 8 F.3d 611, 613-14 (8th Cir. 1993); <u>Wingert v. Bowen</u>, 894 F.2d 296, 298 (8th Cir. 1990). The court finds, therefore, that the ALJ's decision that there is work in that national economy which Plaintiff can perform is supported by substantial evidence.  In conclusion, the court finds that the determination of the ALJ that Plaintiff is not disabled is supported by substantial evidence and that it is consistent with the case law and Regulations.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.


**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and in the Brief in Support of Complaint is **DENIED;** Docs. 1, 13.

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of April, 2010.